IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

KRISTY GREEN                                                                                    PLAINTIFF

v.                                          No. 2:16CV00058 JLH

CITY OF HUGHES, ARKANSAS;
GRADY COLLUM, Mayor, in his official and
individual capacity; THOMAS CAMPBELL, in his
official capacity as City Council Member;
IRENE COMBS, in her official capacity as City
Council Member; MALCOLM CURNE, in his
official capacity as City Council Member;
RUDOLPH ROBINSON, in his official capacity as
City Council Member; JON TATE, in his official
capacity as City Council Member; and
JESSE WHITE, in his official capacity as
City Council Member                                                                          DEFENDANTS

## OPINION AND ORDER

Kristy Green, a black female, was the Chief of Police for the City of Hughes, Arkansas. Grady Collum, a white male, was the mayor. Collum demoted, then terminated[1] Green. Thomas Campbell, Irene Combs, Malcolm Curne, Rudolph Robinson, Jon Tate, and Jesse White served on the city council at the time. Green alleges that Collum and the city council members discriminated against her due to her race and sex. Based on those allegations, she has asserted claims for a violation of equal protection pursuant to 42 U.S.C. § 1983 and a violation of 42 U.S.C. § 1981.[2] The

---

[1] The defendants maintain that Green voluntarily resigned, but for the purpose of summary judgment consider her to have been terminated.

[2] Green alleged but abandoned claims for violation of due process and defamation by failing to respond to the arguments raised by the defendants in their motion for summary judgment. *See Moore-El v. Luebbers*, 446 F.3d 890, 899 n. 2 (8th Cir. 2006); *United States v. Zavala*, 427 F.3d 562, 565, n. 1 (8th Cir. 2005). Because Green has abandoned her claim for violation of due process based on a property right in her continued employment, she has in turn abandoned her § 1982 claim. A plaintiff must show an interference with the rights or benefits connected with the ownership of property to succeed on a § 1982 claim. *See Daniels v. Dillard's, Inc.*, 373 F.3d 885, 887 (8th Cir.

defendants have filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the motion is granted.

I.

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id*.

---

2004). Green does not maintain in her response to the defendants' motion for summary judgment that she had a constitutionally-protected property interest in continued employment with the City.

**II.**

The following facts are undisputed. Green started working for the Hughes Police Department as a part-time patrol officer in February 2013. She was working full-time as a patrol officer by May 2013. Green was promoted to assistant police chief on November 26. She accepted the position of interim police chief on June 2, 2014. Green graduated from the police academy on December 2 and became the police chief on December 17. The parties agree that Green's responsibilities as chief included patrolling the streets of Hughes, writing reports and citations, appearing in court, making arrests, supervising officers, scheduling and covering shifts as needed, handling employee and citizen complaints, performing disciplinary actions, maintaining personnel files, helping the mayor make personnel decisions, familiarizing herself with the court, and developing a relationship with the county sheriff's department.

Collum was elected mayor and took office on January 1, 2015. Collum is a medical doctor. Prior to his becoming mayor, the only direct interaction Collum had with Green was in the patient-doctor context. Once Collum became mayor, he met with Green on occasion to give her certain directives about the scheduling of shifts, the care of equipment, the hiring of certified personnel, the importance of being courteous and reasonable when dealing with citizens, and the avoidance of situations requiring the use of firearms. In early 2016, Collum ran an advertisement in two local publications, advertising that Hughes was accepting applications for police chief through February 20. On February 25, Collum wrote Green a letter to inform her that the Hughes Police Department was to be disbanded, effectively eliminating the position of police chief. Green continued working and the county sheriff provided her a schedule, which changed her work hours.

Green was terminated[3] March 9. Green asked Collum to involve the city council in an attempt to appeal her termination, but Green remained terminated.

## III.

Courts have held that the Equal Protection Clause of the Fourteenth Amendment confers on an individual a right to be free of race and sex discrimination in public employment. *Henley v. Brown*, 686 F.3d 634, 642 (8th Cir. 2012); *Tipler v. Douglas Cnty. Neb.*, 482 F.3d 1023, 1027 (8th Cir. 2007). Such a claim may be asserted under 42 U.S.C. § 1983. *Brown*, 686 F.3d at 642-43. The Eighth Circuit "has held that a § 1983 claim based on alleged violation of equal protection in the employment context is analyzed in the same way as a Title VII claim of sex, race, or religious discrimination." *Mummelthie v. City of Mason City, Ia.*, 873 F. Supp. 1293, 1333 (N.D. Iowa 1995) *aff'd* 78 F.3d 589 (8th Cir. 1996). Likewise, the elements of a Title VII employment discrimination claim and a section 1981 claim in the employment context are identical inasmuch as section 1981 prohibits discrimination in the making and enforcement of private contracts. *See Gregory v. Dillard's, Inc.*, 565 F.3d 464, 469 (8th Cir. 2009); *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1056, 1060 (8th Cir.1997). Therefore, to avoid summary judgment on her employment discrimination claims, Green must either produce direct evidence of discrimination or generate a genuine dispute of material fact for trial under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Floyd-Gimon v. Univ. of Ark. for Med. Sci.*, 716 F.3d 1141, 1149 (8th Cir. 2013).

---

[3]Again, the defendants do not admit that Green was terminated. Rather, they insist that even if she was terminated, they are still entitled to summary judgment.

**A.     Direct Evidence**

Green argues that she has submitted direct evidence of race and sex discrimination. "Direct evidence is evidence that establishes 'a specific link between the discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision.'" *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 933 (8th Cir. 2006) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003)). "'[D]irect' refers to the casual strength of the proof, not whether it is 'circumstantial' evidence." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011). Direct evidence may include remarks by a decisionmaker, but does not include "stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself." *Doucette v. Morrison Cnty., Minn.*, 763 F.3d 978, 986 (8th Cir. 2014).

As direct evidence, Green first cites two comments[4] made by Collum, which she argues indicate his intent to discriminate against her based on race: (1) he stated that a black police officer should "go back to the fields"[5] and (2) in a public board meeting he stated to audience members asking questions that "you people are interrupting my meeting."[6] Document #30 at 12. Collum

---

[4] Green also points to several executive decisions Collum made as direct evidence of race and sex discrimination: (1) attempting to appoint his white, male friend—Vaughn McCollum—as recorder-treasurer; (2) replacing the black city attorney with a white city attorney; and (3) replacing Green with a less-qualified white male. None of these decisions amount to direct evidence because there is no strong causal connection between these decisions and Green's termination. Rather, the decisions are actions that typically factor into the *McDonnell-Douglas* burden-shifting framework.

[5] Green testified in her deposition that Collum made this comment directly to her either in his office or at a gas station. Document #30-1 at 40.

[6] Defendants Combs and Robinson were at the meeting and testified in their depositions that Collum made the comment in response to audience members who had questions. Document #20-56 at 19; Document #20-58 at 13.

denies making the comments, but the Court must view the evidence in a light most favorable to Green and avoid making credibility determinations, which are reserved for the jury. Assuming Collum made the comments, they do not "clearly point[ ] to the presence of an illegal motive" behind Green's termination. *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).

The "go back to the fields" comment is not race-neutral. Greens says Collum made the comment to her in the spring of 2015 during a conversation the two were having about sending an officer named Robert Thomas to the police academy. Collum directed Green to do what she wanted in regards to his continued employment but stated that Thomas was not going to the academy. Document #30-1 at 40. "Not all comments that may reflect a discriminatory attitude are sufficiently related to the adverse employment action in question" to permit the fact finder to infer that the discriminatory attitude was more likely than not a motivating factor in the employer's decision. *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426 (8th Cir. 1999). *See also Saulsberry v. St. Mary's Univ. of Minn.*, 318 F.3d 862, 867-68 (8th Cir. 2003) (stating that an "isolated, stray comment unrelated to the decisional process" is not direct evidence of discrimination, even if the comment is made by a decisionmaker). Collum's comment about Thomas is not connected to Green's termination; it is a stray comment, despite the fact that it was made by a decisionmaker. *Twymon*, 462 F.3d at 934.

The "you people are interrupting my meeting" comment is race-neutral on its face, as well as in its context. *See Twymon*, 462 F.3d at 934 ("Facially race-neutral statements, without more, do not demonstrate racial animus on the part of the speaker."). In *Doucette v. Morrison Cnty. Minn.*, the employee's supervisor commented in a staff meeting that older people should not be in law enforcement. 763 F.3d at 986. The supervisor's audience was composed solely of older women.

6

*Id*. The Eighth Circuit held that the comment was gender-neutral, but that even if it was not, the employee failed to demonstrate that the remark, "while made by a decision-maker, was connected to the decisional process itself." *Id*. Collum made the comment during a meeting about the closure of Hughes High School, which is unrelated to Green's termination. Document #20-56 at 19.

As direct evidence, Green next cites two comments made by Collum and two courses of conduct, which she argues indicate his intent to discriminate against her based on sex: (1) when Collum took office in January 2015, he remarked to former officers Michael Bedford and Floyd Billups that he did not think that a woman should run the police department; (2) Collum said that he did not trust the women working for the City;[7] (3) rather than referring to Green as "Chief Green," he referred to her as "sweetheart" or "darling"; and (4) Collum kept notes to record his meetings with Green but did not keep notes during meetings with other department heads. Document #30 at 9 (citing Document #32-1 at 20, 26; Document #32-7 at 2, ¶5; Document #32-8 at 5, ¶5). Referring to Green as "sweetheart" and "darling," and otherwise treating her differently from other employees does not show that Collum terminated Green's employment because she was a woman. Neither is Collum's isolated statement that he did not trust the women working for the City direct evidence of discrimination: "[A] single comment that merely references gender is not sufficient to create a genuine issue of material fact of sex discrimination." *Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 720 (8th Cir. 2008).

The first comment made by Collum is much closer because stating that a woman should not be in charge of the police department is clear evidence of a discriminatory attitude. According to

---

[7] Collum denies making these comments, but again, the Court views the evidence in the light most favorable to Green because she is the non-moving party.

Eighth Circuit precedent, however, the comment is not direct evidence because of the lapse in time between Collum's comments to Bedford and Billups in January 2015, and Green's termination in March 2016. *See Ramlet v. E.F. Johnson Co.*, 507 F.3d 1142, 1152-53 (8th Cir. 2007) (explaining that a four-month lapse between comments reflective of prejudice and the plaintiff employee's termination undercut a finding of direct evidence of discrimination); *Barkhoff v. Bossard N. America*, 684 F. Supp. 2d 1096, 1106 (N.D. Iowa 2010) (same but with a six-month lapse).

In *Twymon v. Wells Fargo & Co.*, the plaintiff employee's supervisor referred to her as a "good black" and indicated that she should act like an "Uncle Tom." 462 F.3d at 931. The Eighth Circuit agreed with the employee that the statements were "racially offensive and misguided," but concluded that they were not "made during the decisional process accompanying [the employer's] termination of [the employee." *Id*. at 934. The court held that "they were stray comments, despite the fact that they were made by decisionmakers." *Id*. *See also Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir. 1993) (stating that the employee must put on "evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision.").

In contrast, in *Morrow v. Zale Corp.*, the Eighth Circuit held that a genuine issue of material fact existed as to whether a supervisor had earlier told an employee that she should step down because she was "a female" and "a single mom," that it was a "man's world," and that she needed to "man up." 816 F.3d 1025, 1024 (8th Cir. 2016). The court explained: "Because we construe such comments, if made by a decision maker, as direct evidence of a discriminatory animus, we further conclude that under a mixed-motive analysis, [the employee] may be entitled to [some relief]." *Id*.

8

Evidence before the court showed that some of the comments were made during a meeting that took place one month before the employee was terminated. Brief for Appellant, *Morrow v. Zale Corp.*, 816 F.3d 1025 (8th Cir. 2016) (No. 15-2321), 2015 WL 5020687 at *8-9. The meeting was part of an investigation into the employee's on-the-job conduct. *Id*. Similarly, in *Simmons v. New Public School Dist. No. Eight*, the school district voted not to renew an administrator's contract after the district board's president stated to her fellow voting board members shortly before the vote that a woman could not handle the job of administrator. 251 F.3d 1210, 1215 (8th Cir. 2001) (abrogated on other grounds by *Torgerson*, 643 F.3d at 1058).

Here, Collum made his discriminatory remarks more than one year before he made the decision to terminate Green. Former Hughes police officers Bedford and Billups swore under oath that shortly after he took office in January 2015, Collum confided in them in separate one-on-one conversations at the gas pump outside the police station that he did not feel that it was a woman's place to run the police department. Document #32-7 at 2, ¶5; Document #32-8 at 5, ¶5. After making those remarks, Green worked under Collum as the police chief for more than a year. Green has failed to tie the remarks to the decision to terminate her employment. *See Arraleh v. Cnty. of Ramsey*, 461 F.3d 967, 976 (8th Cir. 2006) (finding that plaintiff failed to show link between decisionmaker's comment that black employees should "leave their blackness behind" and his not being hired). Had Collum made the remarks closer in time to Green's termination and in connection with his review of Green's performance, the remarks might show that Collum's discriminatory attitude was a motivating factor in his decision to terminate Green's employment and therefore might constitute direct evidence; but because the remarks are separated in time and in context from the adverse employment action at issue, according to Eighth Circuit precedent, they do not constitute

direct evidence of unlawful discrimination. Rather, they are what the Eighth Circuit has dubbed "statements by decisionmakers unrelated to the decisional process." *See Rivers-Frison v. Se. Mo. Cmty. Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir. 1998).

**B.    Indirect Evidence**

Under *McDonnell Douglas Corp. v. Green*, Green must first present a prima facie case of intentional discrimination. 411 U.S. 792, 802-03, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). The burden then shifts to the defendants to proffer a legitimate, nondiscriminatory reason for the action they took. *Id*. If the defendants meet that burden, which is "minimal," the burden shifts back to Green to show that the proffered nondiscriminatory reason is merely pretext for unlawful discrimination. *Id*. *See also Cody v. Prairie Ethanol, LLC*, 763 F.3d 992, 996 (8th Cir. 2014) (applying *McDonnell Douglas* burden-shifting framework).

To establish a prima facie case of race and sex discrimination based on alleged discriminatory discharge Green must show that (1) she is a member of a protected class; (2) that she met her employer's legitimate expectations; (3) that she suffered an adverse employment action, and (4) that the circumstances give rise to an inference of discrimination. *Lake v. Yellow Transp., Inc.,* 596 F.3d 871, 874 (8th Cir. 2010). The defendants have conceded that Green is a member of a protected class and that she suffered an adverse employment action. Document #22 at 5. The issue is whether Green can show that she met her employer's legitimate expectations.

Green argues that an employee may either show that she met her employer's legitimate expectations or that she was otherwise qualified for the position. Document #30 at 10. Green says she was "otherwise qualified," but does not address whether she was meeting her employer's legitimate expectations. *Id*. "*McDonnell Douglas* makes plain that the facts in Title VII cases will

vary, and that the prima facie proof required is 'not necessarily applicable in every respect to differing factual situations.'" *Miller v. Citizens Sec. Grp., Inc.*, 116 F.3d 343, 346 (8th Cir. 1997) (citing 411 U.S. at 802 n. 13, 93 S. Ct. at 1824 n. 13). Whether an employee is qualified is the proper question in Title VII discrimination cases arising from a failure to promote or failure to hire, but in every termination case the plaintiff already had been hired and thus, presumably, was qualified for the job. Therefore, in a termination case, "[t]o establish a prima facie case that she was suspended or terminated because of her race [or sex], [a plaintiff] must show that she met her employer's legitimate expectations." *Robinson v. Am. Red Cross*, 753 F.3d 749, 755 (8th Cir. 2014); *see also Jones v. City of St. Louis, Mo.*, 825 F.3d 476, 480 (8th Cir. 2016); *Cherry v. Ritenour Sch. Dist.*, 253 F. Supp. 2d 1085, 1094 (E.D. Mo. 2003) (recognizing a split in Eighth Circuit cases but applying the more stringent "legitimate expectations" standard in cases alleging wrongful termination).

"The standard for assessing performance 'is not that of the ideal employee, but rather what the employer could legitimately expect.'" *Calder v. TCI Cablevision of Mo., Inc.*, 298 F.3d 723, 729 (8th Cir. 2012) (quoting *Keathley v. Ameritech Corp.*, 187 F.3d 915, 920 (8th Cir. 1999)). *See also Miner v. Bi-State Dev. Agency*, 943 F.2d 912, 913-14 (8th Cir. 1991). Green must do more than insist that she was a good employee, or that others thought she was a good employee. *See Cherry*, 253 F. Supp. 2d at 1095 (collecting cases). She "must show by independent evidence in the summary judgment record that she 'was actually performing' her job at the level specified by Defendant." *Id*. (quoting *Whitley v. Peer Review Sys., Inc.*, 221 F.3d 1053, 1055 (8th Cir. 2000)).

In *Whitley v. Peer Review Sys. Inc.*, the employer produced specific evidence of the employee's deficiencies. 221 F.3d at 1055 (abrogated on other grounds by *Torgerson*, 643 F.3d at

11

1059). In response, the employee directed the court "to broad, conclusory statements by herself and others that she was doing her job adequately." *Id*. The court held that such statements were insufficient to refute her employer's "specific evidence of her poor performance." *Id*.

Here, there is specific evidence in the record that Green was not meeting the City's legitimate expectations.[8] The defendants submitted a litany of complaints citizens made about the police department and about Green, most of which relate to the failure to respond to citizens who were the victims of burglaries. Green says that Collum told her that she was doing a good job and either denies the complaints or says that she did not know about them. Document #20-1 at 26; Document #29. This is not enough to overcome the defendants' specific evidence.

The record includes the affidavits of citizens who describe their own experiences with the police department and with Green.[9] Rule 56(c) provides: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in

---

[8] The Court did not consider Collum's personal notes, which Green argued were inadmissible hearsay. *See* Document #20-17.

[9] *See* Document #20-18 (affidavit from representative of Helena Chemical Company, who complained that the company eventually stopped calling the Hughes police and starting calling the county police); Documents #20-19, 20, 21, 22, 30, 31, 32, 33, and 35 (affidavits from citizens, who complained that their property was stolen but was never recovered and to their knowledge, the robberies were not investigated nor were any arrests made); Document #20-26 (affidavit from citizen, who complained that it took her six weeks to obtain the police report from an accident in which her daughter's car was hit by another driver, who left the scene of the accident but later provided his information to police and was not ticketed); Document #20-28 (affidavit from local business owner, who complained that he called the police when his car-wash was vandalized, but got no response, so he had to go to the station where he was told to fill out a report on a blank sheet of paper; the police department did not follow-up, so the business owner went to the county to get what he needed to file a claim with his insurance company); Document #20-29 (affidavit from local farmer, who complained that after one of his storage facilities was burglarized, Green promised a copy of the police report the next day; when the farmer went to the station to obtain the report, nobody answered the door even though the lights were on and Green's car was in the parking lot. The farmer did not get a copy of the report until twenty-five days after the burglary).

evidence, and show that the affiant or declarant is competent to testify on the matters stated." "When an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment." *Brooks v. Tri-Sys., Inc.*, 425 F.3d 1109, 1112 (8th Cir. 2005). These affidavits present specific facts based on the affiants' personal experiences with the police department during the time Green was chief. It is not the defendants' burden to show that Green did not meet legitimate job expectations. Rather, it is Green's burden to show that she did. Green has failed to discharge that burden. While it is not the defendants' burden, they have presented evidence that Green was not meeting the City's legitimate expectations of police chief. Green has not met proof with proof.

Because Green was not doing her job as police chief, a reasonable jury could not find that Green was terminated because of her race or sex in the face of this evidence. *Cf. Rothmeier v. Invest. Advisers, Inc.*, 85 F.3d 1328, 1335 (8th Cir. 1996) (the law "allows a trial judge to decide on a motion for summary judgment that the evidence is insufficient to infer discrimination"). Green's claims for employment discrimination based on race and sex fail as a matter of law.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED. Document #20. This action is dismissed with prejudice.

IT IS SO ORDERED this 17th day of May, 2017.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE